Cicero I. Murray and Olive B. Murray v. Commissioner.
Murray v. Commissioner
Docket No. 44922.
United States Tax Court
T.C. Memo 1955-283; 1955 Tax Ct. Memo LEXIS 54; 14 T.C.M. (CCH) 1100; T.C.M. (RIA) 55283; October 21, 1955
Chas. E. Brace, Esq., 715 Colcord Building, Oklahoma City, Okla., for the petitioners. T. W. Sommer, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income taxes in the amounts of $2,167.14 for 1948 and $504.94 for 1949. The only question for determination is whether the gains from the sale of certain subdivided real estate are taxable as ordinary income as determined by the Commissioner or as capital gains as claimed by the petitioners. [Findings of Fact] All of the facts are stipulated and are so found. Petitioners are husband and wife. They filed their joint returns for 1948 and 1949, the taxable years here under consideration, with the then collector of internal revenue at Oklahoma City, Oklahoma. *55 Cicero I. Murray has been a practicing attorney since 1910. In 1944 the petitioners acquired 158 acres of land in Garvin County, Oklahoma, approximately one-half mile from Lindsay, Oklahoma. After the petitioners' acquisition of the land in Garvin County, Oklahoma they grazed cattle on the land, and erected cattle and hay barns. In 1945 shortly after this land was acquired considerable oil activity developed in the Lindsay area. One hundred and thirty acres of the 158 acres were surveyed and platted. The original town site of Murray Hill contained 28 blocks of 172 lots. In a subsequent plat additional lots were platted to the original town site. Then in a third plat the first addition to Murray Hill was added with 7 blocks of 40 lots, making a total of 35 blocks of 219 lots. Many of these lots as originally platted were one-half acre in area but were later divided up for sale into smaller lots. The dedication of the land for town site purposes was filed in the office of the county clerk of Garvin County (at Pauls Valley), Oklahoma on July 23, 1947. Petitioners installed a water system and laid out, graded and improved streets for the subdivision. The town site was incorporated *56 as the town of Murray Hill, Oklahoma, and the Order of Incorporation was filed in the county clerk's office, Garvin County, March 22, 1950. Sales of lots in the subdivision were made as follows: 15 in 1947; 57 in 1948, of which 25 were sold to one person; 16 in 1949; and 13 in 1950. Records in the county clerk's office, Garvin County, Oklahoma disclose the following additional real estate transactions by petitioners in Garvin County for 1947 to 1950, inclusive: In February 1947 petitioners transferred by quitclaim deed bearing no documentary stamps and showing one dollar consideration, real property in Section 16, Township 2 N., Range 2 E., to C. D. Benthall. On August 20, 1948, petitioner acquired Lots 3, 4 and 5, in Block 20 and Lot 6 of Block 13 in Purdy, Oklahoma. On October 26, 1948, petitioner acquired 20 acres of land in the S/2 of SW/4 SW/4 in Section 12, Township 4 N., Range 4 W., from C. A. Milligan. On February 24, 1949, petitioners transferred property in Section 14, Township 3 N., Range 3 W., to B. R. Stephens. On March 25, 1950, petitioners acquired a lot in Block 9, Murray Hill, from Jeff Kincannon, who had previously purchased lots from petitioners. *57 On July 18, 1950, petitioners acquired Lot 5 in Block 6, Murray Hill, (with house) from H. W. Patton, who had previously purchased property from petitioners. Petitioners erected a house in Murray Hill for their own residence. Petitioner Cicero I. Murray stated in a conference that the sales of lots in the Murray Hill subdivision were made as a result of a full page advertisement he placed in the Lindsay weekly newspaper and that he handled the sales himself in his law office in Lindsay, Oklahoma. In 1949 petitioner Cicero I. Murray built three houses for sale, two houses held for rental purposes, and two houses under contract for individual owners. Petitioner also built a water line from Lindsay, Oklahoma and operated the water system for the Murray Hill subdivision. All of these activities were conducted by petitioner in addition to his law practice. In their 1949 return petitioners deducted as business expenses interest on money borrowed to finance the development and improvement of the subdivision. Development of the Murray Hill subdivision included streets, trees, water system, grading, etc., which cost petitioners approximately $48,000. Income from petitioner Murray's *58 law practice was $4,587.90 for 1948 and $7,918.50 for 1949. Petitioners' income from the lot sales was $15,715 and $4,950, respectively, for those same years. [Opinion] The question presented here has frequently been before the courts and in a recent decision, after reference to numerous cases, the Circuit Court of Appeals for the Fifth Circuit, in reversing a Memorandum decision of this Court, , said: "The test as to whether the capital gain provisions apply in such event is, at bottom, whether the purpose of the sales is primarily making money by carrying on a substantial part of the activities of a person engaged in the business of selling houses, [real estate] or to dispose of or liquidate the rental business [original investment]." [Words in brackets supplied] The stipulated facts as set out above are reasonably brief and there is no occasion to recapitulate. We think the inference to be drawn from them is that the real estate in question was held by the petitioners primarily for sale to customers in the ordinary course of business. That Cicero was an attorney and also engaged in the practice of law *59 during the taxable years is of little consequence, as it is well established that a person simultaneously may be engaged in more than one business. . The sales of the lots were substantial, continuous and frequent. The subdividing in and of itself together with the not inconsequential expenses incident thereto, evidence that the action was taken with the intent of furthering sales of the property, not as a whole or in a liquidating sense, but as a part of a plan to sell the lots over a period of time. And that Cicero himself held the lots out for sale is evidenced by the advertisement in The Lindsay News - a full page spread - in which he held out "choice building lots" for inspection and sale. We hold that Cicero was in the business of selling real estate in the years in question and that the gains from the sales of the lots were ordinary income and so taxable. Decision will be entered for the respondent.